United States District Court
District of Massachusetts

```
                                   )
HOUSE OF CLEAN, INC.,              )
          Plaintiff,               )
                                   )
          v.                       )      Civil Action No.
                                   )      07-10839-NMG
ST. PAUL FIRE AND MARINE           )
INSURANCE CO., INC., EMPLOYERS     )
INSURANCE COMPANY OF WAUSAU,       )
WAUSAU UNDERWRITERS INSURANCE      )
COMPANY, GLOBE INDEMNITY           )
COMPANY, ROYAL GLOBE INSURANCE     )
COMPANY, INC. and ARROWOOD         )
INDEMNITY COMPANY,                 )
          Defendants.              )
                                   )
```

MEMORANDUM & ORDER

GORTON, J.

This breach of contract action arises out of the refusal of several insurance companies to provide coverage under liability policies held by a dry cleaning business, House of Clean, Inc. ("HOC"). HOC's insurance claims were made after the release of certain hazardous material on real property in Andover, Massachusetts. Before the Court are cross-motions for partial summary judgment with respect to one particular insurance policy.

I.  **Background**

    A.  **Factual Background**

    Plaintiff HOC operated a dry cleaning business on property owned by former co-plaintiff 77 Main Street Properties LLC ("77

Main") from 1967 until 2007.[1]  During that time, HOC used the
compound perchloroethylene ("PCE") as the primary cleaning agent
in its dry cleaning business.  For the duration of its business
operations and, according to HOC, especially from the years 1970
to 1985, PCE was released into the ground around the property.

Those spills were apparently the product of a two-step
"process".  First, PCE was prevalent in the basement.  Used PCE
filters and so-called "waste PCE" were stored in cardboard boxes
in the basement near a loading ramp.  Moreover, when PCE was
delivered to a 125-gallon storage tank originally kept in the
basement, some PCE apparently leaked out of the deliverer's hose
onto the basement floor and delivery ramp.  Additional spills
occurred when waste PCE was transferred from the first floor to
5-gallon storage buckets in the basement because those buckets
would sometimes overflow.

Consequently, HOC alleges, some PCE made its way into the
ground during rare, heavy rain storms.  A drain located at the
base of a loading ramp adjacent to the basement would apparently
back up and cause flooding.  The PCE in cardboard boxes and on
the basement floor would then contaminate the flood waters and
flow back into the drain as the water level receded.

In 2005, in conjunction with an inspection by a potential
lessee of the property, PCE and trichloroethylene ("TCE") were

---

[1]   77 Main has been dismissed as a named plaintiff.

-2-

detected in the soil and groundwater. PCE was also detected in the air of surrounding residential apartments. As a result, on April 4, 2006, pursuant to M.G.L. c. 21E, the Massachusetts Department of Environmental Protection ("DEP") issued a notice of responsibility ("NOR") to HOC stating that there had been a release of hazardous material and ordering the submission of a response plan.

On October 2, 2006, HOC provided notice of the NOR to two insurers, co-defendants St. Paul Fire and Marine Insurance Company, Inc. ("St. Paul") and Wausau Underwriters Insurance Company ("Wausau"). Defendants Globe Indemnity Company and Royal Globe Insurance Company, Inc. ("Royal") were not notified at that time.[2] On August 13, 2008, individuals with interests in the properties around the dry cleaning business brought suit against HOC for damages arising out of the contamination. In general, HOC seeks to have its insurers defend it against and indemnify it for any liability incurred as a result of the NOR and the third-party suit.

In 2007, co-defendants St. Paul and Wausau undertook a defense of the claims against HOC but did so under a reservation of rights. At the time it filed its motion for summary judgment, HOC reported that St. Paul and Wausau had reimbursed it for

---

[2] Arrowood Indemnity Company ("Arrowood") is apparently the successor of those defendants.

$1,273,511.03 of an alleged $1,597,275.39 in defense-related
costs.   HOC seeks a defense from Arrowood to cover the remaining
$323,764.36 as well as interest and costs associated with its
pursuit of Arrowood's defense.

Arrowood was brought into these proceedings in 2008.   HOC
claims that during a review of its business records, it uncovered
a Comprehensive General Liability Policy with Royal that was in
effect from January, 1982 to January, 1983.   The policy contains
two clauses relevant here.   First, a pollution exclusion provides
that insurance does not apply to

> bodily injury or property damage arising out of the
> discharge ... [or] release ... [of] contaminants or
> pollutants into or upon land, the atmosphere or any water
> course or body of water; but this exclusion does not
> apply if such discharge ... [or] release ... is sudden
> and accidental.

Second, the policy requires that

> the insured shall as soon as practicable report in
> writing to the Company or its agent every loss, damage,
> or occurrence which may give rise to a claim under this
> policy.

On July 23, 2008, HOC sent notice to Arrowood describing the
facts and stating why it believed that Arrowood was required by
the policy to defend it against and indemnify it with respect to
the relevant claims.   Arrowood acknowledged receipt of the letter
one week later.   On August 12, 2008, HOC sent a second letter
restating its position and threatening suit without a prompt
commitment.   Arrowood responded on September 5, 2008 requesting

-4-

more information.  Arrowood claims that information was provided
two months later while HOC asserts it was provided within 15
days.  HOC contends that it inquired twice more into the status
of the insurer's review in mid-to-late October, 2008.

Frustrated by Arrowood's "delay", on November 20, 2008, HOC
filed a motion to amend its complaint to add the Royal/Arrowood
parties as defendants to this action.  That same day, Arrowood
sent a letter to HOC denying coverage based upon 1) the pollution
exclusion and 2) the policy's notice requirements.  By letter
dated January 7, 2009, Arrowood expounded on its reasoning.

**B.  Procedural History**

On April 30, 2009, this Court granted HOC's motion to amend
its complaint to add additional defendants.  As a result, on May
6, 2009, HOC filed a third amended complaint adding Globe
Indemnity Company and Royal-Globe Insurance Company (of which
Arrowood is the successor).  The complaint seeks a declaratory
judgment that the added defendants be required to defend and
indemnify HOC and brings claims for breach of the insurance
contract and violation of the Massachusetts Consumer Protection
Act, M.G.L. c. 93A.

On October 29, 2009, HOC moved for partial summary judgment
in its favor on the breach of contract and Chapter 93A claims
against Arrowood.  Arrowood timely opposed that motion and filed

-5-

a cross-motion for summary judgment on all counts.[3]  HOC filed an opposition to Arrowood's cross-motion to which Arrowood was allowed to file a written reply.  A motion hearing was held on January 7, 2010.

## II.  Analysis

### A.  Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  Id.  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could

---

[3]   Arrowood simultaneously moved for leave to file a memorandum opposing HOC's motion and in support of its cross-motion in excess of 20 pages.  After the Court allowed that motion in March, 2010, Arrowood also filed an second, identical cross-motion for summary judgment.

return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

## B.  Application

HOC moves for summary judgment against Arrowood for 1) breach of its contractual obligations to defend against the NOR and the neighbors' third-party suit (Count II) and 2) unfair and deceptive insurance practices in violation of M.G.L. c. 93A (Count III). Arrowood cross-moves for summary judgment that 1) it did not have a duty to defend HOC and thus did not breach its insurance contract (Counts I and II), 2) even if it had a duty to defend, HOC's non-compliance with the policy's notice requirement relieves Arrowood from that duty (Counts I and II) and 3) its actions did not violate M.G.L. c. 93A (Count III).  If Arrowood does not prevail, it requests a continuance pursuant to Fed. R.

Civ. P. 56(f) to conduct discovery necessary to respond to HOC's
contention that HOC is entitled to recover costs incurred in
pursuit of Arrowood's defense.

Although the parties have submitted cross-motions for
summary judgment, their affirmative arguments for summary
judgment are substantively similar to their oppositions to the
summary judgment motions of their opponents. Accordingly, the
motions are considered together.

## 1.   Arrowood's Duty to Defend

The duty to defend is broader than the duty to indemnify.
In general, if the allegations against an insured are "reasonably
susceptible of an interpretation that they state or adumbrate a
claim covered by the policy terms, the insurer must undertake the
defense." E.g., Essex Ins. Co. v. BloomSouth Flooring Corp., 562
F.3d 399, 403 (1st Cir. 2009) (citations omitted). Further, if
such allegations (i.e., those reasonably susceptible to an
interpretation that they state a claim) exist on the face of the
underlying claims, then to escape the duty to defend, an insurer
must demonstrate "with conclusive effect" that the third-party
cannot establish a claim within the policy. In re Acushnet River
& New Bedford Harbor, 725 F. Supp. 1264, 1266 (D. Mass. 1989).

The duty to defend, however, has limits. If the allegations
in the underlying complaint lie expressly outside the policy,
there is no duty to defend. Moreover, the insured cannot "force

-8-

its insurer to defend him by simply providing to the insurer facts which, if proven, would create coverage." Nasciemento v. Preferred Mutual Ins. Co., 513 F.3d 273, 277 (1st Cir. 2008) (citations omitted).

Here, HOC contends that Arrowood has a clear and unequivocal duty to defend its claims and its denial of that duty constitutes a breach of the insurance contract. Specifically, HOC contends that it is at least possible to conclude that the releases or discharges of PCE were "sudden and accidental" and thus excepted from the pollution exclusion in the policy.

What constitutes a "sudden and accidental" discharge of pollutants is a frequent topic of litigation. If a release of pollutants is sudden and accidental, standard insurance policies provide coverage for an otherwise-excluded release of contaminants. Under Massachusetts law, "sudden" carries a temporal element requiring an abrupt, non-gradual release. As a result, there is no duty to defend where the complaints arise out of routine business practices or activities. See Lumbermen's Mutual Casualty Co. v. Belleville Industries, Inc., 555 N.E.2d 568, 572 (Mass. 1990); Liberty Mut. Ins. Co. v. SCA Services, Inc., 588 N.E.2d 1346 (Mass. 1992).

In this case, HOC argues that PCE releases were caused by infrequent floods and thus were sudden, not gradual or part of routine pollution practices. Indeed, HOC asserts, Arrowood's co-

defendants have undertaken its defense which, in and of itself, establishes that the interpretation is reasonable and that is all that is required to invoke the duty to defend.

Arrowood, on the other hand, insists that the underlying claims against HOC are not reasonably susceptible to an interpretation that the pollution was sudden and accidental. First, Arrowood contends that when the policy and the underlying third-party claims are compared, as required, nothing in the underlying claims alleges facts to support a theory of sudden and accidental releases. Rather, Arrowood maintains, the only evidence that pollution was sudden and accidental comes from the biased affidavits of HOC employees and reliance on such "proof" to require a defense is impermissible.

In any event, the insurer continues, the facts do not support HOC's argument because the pollution was caused by routine practices of storing and transferring PCE in HOC's basement, even assuming that occasional floods ultimately led to the offending discharges. Relying heavily on Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc., 938 F.2d 1423 (1st Cir. 1991), Arrowood contends that HOC's operations "involved continuous polluting activities even if some isolated events might have been temporarily sudden". Arrowood argues that trying to distinguish among floods involves the impossible task of micro-analyzing a pollution-prone operation, which Belleville

-10-

disfavors.  It concludes that HOC's activities were not sudden
and accidental, fall under the pollution exclusion and are exempt
from coverage thus excusing Arrowood from any duty to defend HOC
from the pending claims.

Notwithstanding the near balance of the opposing arguments,
the Court finds that Arrowood has a duty to defend the third-
party claims.  Although HOC may not ultimately be indemnified
because of a possible finding that the PCE release(s) were not
"sudden and accidental", the standard for imposing a duty to
defend is broad and the claims against HOC are at least
reasonably susceptible to an interpretation that they are
covered.

Arrowood's arguments to the contrary are unpersuasive.
First, Arrowood repeatedly contends that the existence of a duty
to defend is determined only by analyzing the underlying
pleadings, not extrinsic evidence, and that the third-party
pleadings in this case do not allege pollution activities that
could be characterized as sudden and accidental.  That position
is unavailing.  The duty to defend depends upon facts alleged in
the underlying complaints and facts which are known or readily
knowable to the insurer when the question arises.  E.g., Open
Software Found., Inc. v. U.S. Fidelity and Guar. Co., 307 F.3d
11, 14-15 (1st Cir. 2002) (citation omitted).  Known or knowable
extrinsic facts, such as those set forth in demand letters,

-11-

therefore, serve to aid the interpretation of the underlying pleadings and can add substance and meaning to otherwise skeletal third-party claims. Extrinsic evidence cannot, however, provide independent grounds for a duty to defend. Id. at 15-16.

Here, Arrowood was aware of more than just the neighbors' pleadings and the DEP's NOR at the time it refused to defend, such as allegations in HOC's demand letter. Contrary to Arrowood's contention, such extrinsic evidence operates to aid interpretation of the underlying complaints. In fact, it is entirely unsurprising that, as Arrowood urges, the third-party complaints do not detail any rare floods or sudden and accidental PCE releases because there would be no way for the neighbors or the DEP to know such specifics (or even to be concerned about them). From the third-party complainants' perspective, all that mattered was that pollution occurred. If that pollution resulted from sudden and accidental releases, HOC would likely be the only party with such first-hand knowledge.

Thus, although the affidavits of HOC employees must be carefully scrutinized for bias, the Court does not find it necessary to discount them as having no bearing on the nature of the pollution. Open Software, 307 F.3d at 16. Rather, such extrinsic facts add substance and meaning to the complainants' skeletal allegations. At the very least, the affidavits create the kind of factual dispute that precludes summary judgment for

the insurer and leads this Court to find that the insurer was aware of enough information to support a duty to defend. See Acushnet River, 725 F. Supp. at 1269-71.

Nor does the First Circuit's decision in Belleville support a different conclusion. Significantly, Belleville decided whether an insurer had a duty to indemnify, not to defend, and the latter is subject to a distinctly lower burden of proof. Moreover, the facts are distinguishable. In Belleville, the insured knew about regularly-occurring pollution, tried to neutralize it and then deliberately released the resulting pollutants into the municipal sewer system. The company had, in other words, "for a lengthy period of time purposefully and regularly been carrying on operations involving continual pollution". 938 F.2d at 1429. That regular pattern of polluting activities was not rendered "sudden and accidental" by the discharges from an intervening heavy rainstorm and a fire.

Here, HOC arguably did nothing deliberate with respect to the pollutants which were, according to HOC, accidentally and suddenly discharged into the storm drains on the occasion of heavy rainfalls. Unlike the situation in Belleville, therefore, the events by which pollution was caused here were (arguably) "beyond the long-range reasonable expectation of the insured". Id. at 1427. As such, the Court does not construe Belleville as controlling here.

-13-

The Court will, therefore, deny Arrowood's motion for summary judgment with respect to Counts I and II and will allow HOC's motion for summary judgment with respect to Count II.

### 2.   Notice to Arrowood

To avoid coverage based upon a claimant's failure to comply with an insurance policy's notice requirement, an insurer must show that 1) notice was not made within a reasonable time and 2) the insurer was prejudiced by the delay.  E.g., Fireman's Fund Ins. Co. v. Valley Manufactured Prods. Co., 765 F. Supp. 1121 (D. Mass. 1991).  The insurer bears the burden of showing "the precise manner in which its interests have suffered".  Darcy v. Hartford Ins. Co., 554 N.E.2d 28, 32 (Mass. 1990).  In determining whether prejudice has been shown, the length of delay is a factor which must

be accompanied by a showing of some other facts or circumstances (such as, for example, the loss of critical evidence, or testimony from material witnesses despite diligent good faith efforts on the part of the insurer to locate them) which demonstrate[] that the insurer's interests have been actually harmed.

Id. at 31-32.

In this case, Arrowood contends that even if the claims against HOC might fall under the policy's "sudden and accidental" exception, HOC's failure to comply with the policy's notice requirement bars coverage and warrants summary judgment in its favor.  In particular, Arrowood states that while the other insurers were notified of claims in October, 2006, it was not put

-14-

on notice until July, 2008.  The fact that HOC had forgotten
about the policy is no excuse.

Moreover, Arrowood contends that it has clearly suffered
prejudice from the delay.  First, in the time between HOC's
learning of the claims and its notice to Arrowood, HOC's owner,
Nicholas Aznoian ("Aznoian"), died thereby depriving Arrowood of
access to a critical witness.  Second, Arrowood was unable to
conduct its own investigation earlier, while events were fresher
in the minds of other witnesses and while HOC still owned the
property and operated its business there.

HOC responds that this argument is without merit because it
notified Arrowood "as soon as practicable" which is all that was
required under the policy.  In addition, HOC contends that
Arrowood has not suffered any prejudice because it has the same
information that the other insurers who were notified in 2006
have.  Arrowood characterizes the latter point as irrelevant
because it, rightfully, would have conducted its own more
comprehensive investigation had it been timely notified.

The Court will deny Arrowood's motion for summary judgment
on this ground.  With respect to the prompt notice requirement,
Arrowood cites no Massachusetts or First Circuit law for the
proposition that such notice after a misplaced policy is found is
not "as soon as practicable".  Moreover, Arrowood has failed to
meet its burden in establishing prejudice.  As an initial matter,

-15-

"[t]he existence of prejudice is ordinarily a question of fact,"
16 Williston on Contracts § 49:109 (4th ed. 2009), and the
parties here dispute whether any delay has actually harmed
Arrowood. That weighs against summary judgment.

Furthermore, the rationale advanced by Arrowood to support a
claim of prejudice is unpersuasive because it does not explain
how its interests have suffered. While Aznoian's death certainly
prevents discovery of facts known to him and never imparted to
anyone else, HOC's day-to-day manager during the time of
Arrowood's policy, Rosario Fichera ("Fichera"), is alive and
available for deposition and is well-positioned to testify about
facts from the policy year at issue (1982), which is all that
matters. Arrowood has not asserted that it has attempted to
depose Fichera or become aware in any other way that Aznoian's
death has actually interfered with its ability to investigate the
incidents of pollution.

Arrowood's remaining contentions similarly fall short. The
subject property presumably may still be inspected (which
Arrowood has apparently not yet attempted) regardless of who owns
it and the "freshness" of the minds of the witnesses is surely
not of crucial importance given that the relevant time period is
1982 and it is unlikely that 1982 would have been any "fresher"
in a witness's mind in 2006 than it was in 2008.

Although Arrowood does, to be sure, have a right to conduct

-16-

its own investigation and the death of witnesses has supported a finding of prejudice in other cases, more is required to entitle it to summary judgment here. This case is distinguishable from those cited by Arrowood, e.g., Fireman's Fund, 765 F. Supp. at 1128-29, and the Court declines to enter summary judgment on this ground.

### 3. The Consumer Protection Act (M.G.L. c. 93A)

HOC contends that pursuant to M.G.L. c. 176D, § 3(9), Arrowood was legally obligated to provide a prompt and full defense of its claims. A violation of that provision, in turn, constitutes a violation of Chapter 93A. HOC argues that Arrowood's "dilatory" response to the request for defense and coverage, a delay of some 168 days, was not prompt enough and therefore violated Massachusetts law.

Arrowood responds that a good faith disagreement between an insurer and an insured regarding coverage or prejudice does not constitute a violation of Chapter 93A. At the very least, it argues, its decision to deny defense and coverage was a reasonable interpretation of the policy and, therefore, summary judgment in its favor on this count should be allowed.

Arrowood is correct. HOC offers no authority for the proposition that a "delay" such as Arrowood's (during which it had to decide a complicated policy matter) constituted bad faith practice. Arrowood's decision to deny coverage was at least

-17-

reasonable and summary judgment in Arrowood's favor will, therefore, be allowed on this Count.

### C. HOC's Claim for Damages, Fees, Costs and Interest

In its motion for summary judgment HOC claims that it is entitled to recover all costs incurred in the pursuit of its claim for defense against Arrowood. Arrowood requests, pursuant to Fed. R. Civ. P. 56(f), the opportunity to take discovery "to determine the validity of HOC's claims and accounting" before opposing that claim. Arrowood attaches its discovery requests to its motion.

HOC does not explicitly respond to Arrowood's request for a continuance. In its statement of material facts filed along with its opposition to Arrowood's motion, however, HOC states that it

> has provided affidavits, summaries and detailed documents providing a fully factual and accurate basis for all of its damages, attorney fees, claim related costs and prejudgment interest.

It is unclear what material HOC is referring to and whether such material was provided to Arrowood before or after Arrowood's summary judgment motion was filed. Accordingly, the Court will not enter summary judgment on HOC's request for costs at this stage. Arrowood's discovery requests are to be answered (if they have not already been answered) and the parties will, if necessary, submit renewed motions on this issue after such discovery is complete.

-18-

**ORDER**

In accordance with the foregoing,

1)   plaintiff's motion for partial summary judgment (Docket No. 47) is, with respect to Count II, **ALLOWED** and, with respect to Count III, **DENIED**;

2)   defendant's cross-motion for summary judgment (Docket Nos. 54 and 63) is, with respect to Counts I and II, **DENIED** and, with respect to Count III, **ALLOWED**; and

3)   the parties are directed to complete discovery on the issue of damages and costs after which they will, if necessary, submit renewed motions on the subject.

**So ordered.**

_Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated April 2, 2010