```
                    United States District Court
                      District of Massachusetts
_____
                              )
HOUSE OF CLEAN, INC.,         )
        Plaintiff,            )
                              )
        v.                    )   Civil Action No.
                              )   07-10839-NMG
ST. PAUL FIRE AND MARINE      )
INSURANCE CO., INC.,          )
        Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This breach of contract action arises out of the refusal of several insurance companies to provide coverage under liability policies held by a dry cleaning business, House of Clean, Inc. ("HOC"). HOC's insurance claims were made after the release of certain hazardous material on real property in Andover, Massachusetts. Before the Court is plaintiff's motion to amend the complaint for the fourth time.

## I. Factual Background

Plaintiff HOC operated a dry cleaning business on property owned by former co-plaintiff 77 Main Street Properties LLC ("77 Main") from 1967 until 2007.[1] During that time, HOC used the compound perchloroethylene ("PCE") as the primary cleaning agent in its dry cleaning business. For the duration of its business

---

[1] In October, 2009, the Court allowed the parties' joint motion to dismiss 77 Main without prejudice.

operations and, according to HOC, especially from the years 1970 to 1985, PCE was released into the ground around the property.

In 2005, in conjunction with an inspection by a potential lessee of the property, PCE and trichloroethylene ("TCE") were detected in the soil and groundwater. PCE was also detected in the air of surrounding residential apartments. As a result, on April 4, 2006, pursuant to Mass. Gen. Laws ch. 21E, the Massachusetts Department of Environmental Protection ("DEP") issued a notice of responsibility ("NOR") to HOC stating that there had been a release of hazardous material and ordering the submission of a response plan.

On August 13, 2008, individuals with interests in the properties around the dry cleaning business brought suit against HOC for damages arising out of the contamination. In general, HOC seeks to have its insurer, St. Paul Fire and Marine Insurance Company, Inc. ("St. Paul"), defend it against and indemnify it for any liability incurred as a result of the NOR and the third-party suit.

## II. **Procedural History**

HOC filed its complaint on May 2, 2007 and an amended complaint on June 13, 2007 which added an allegation that St. Paul violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"). On July 23, 2007, HOC and St. Paul entered into an agreement which provided that St. Paul would

make certain payments and HOC would dismiss, with prejudice, its Chapter 93A allegation. HOC retained the right to file a new Chapter 93A claim with respect to conduct occurring after the date of the agreement. In September, 2007, the Court issued a scheduling order but, two months later, the case was stayed pending settlement negotiations.

In May, 2008, HOC informed St. Paul that it intended to renew its Chapter 93A claim and moved to reopen the case due to St. Paul's refusal to pay its defense costs. The Court allowed HOC's motion to reopen the case and ordered the parties to file a motion for a joint scheduling order. No proposed order was submitted. Instead, on November 10, 2008, the parties amended the July, 2007 agreement by adding specific procedures for the payment of defense costs by St. Paul and, with leave of Court, the litigation was stayed once again.

On September 26, 2008 and April 30, 2009, the Court granted HOC's motions to amend its complaint twice more to add additional insurers as defendants. In October, 2009, HOC moved for partial summary judgment on its breach of contract and Chapter 93A claims against Arrowood Indemnity Company ("Arrowood"), a successor to one of the added defendants. Arrowood timely opposed that motion and filed a cross-motion for summary judgment on all counts. In a Memorandum & Order entered April 2, 2010, the Court allowed HOC's motion for partial summary judgment on Count II, for breach

of contract, and allowed Arrowood's motion for partial summary judgment on Count III, for the non-violation of Chapter 93A. In May, 2010, the Court issued a second scheduling order.

Mediation in October, 2010 was unsuccessful and discovery commenced thereafter. In November, 2010, a third scheduling order was entered which set a discovery deadline of January 31, 2011 and a trial date of March 14, 2011. Between October 21, 2010 and January 31, 2011, the parties exchanged over 20,000 documents and completed five depositions. The Court allowed joint motions to dismiss all of the defendants except St. Paul on December 16, 2010.

Currently, the only remaining viable counts are for a declaratory judgment and breach of contract against St. Paul. On February 18, 2011, plaintiff filed a motion to amend its complaint for a fourth time which St. Paul timely opposed. On March 2, 2011, the Court allowed the parties' motion to postpone the trial, set a firm deadline of April 7, 2011 for summary judgment motions and notified the parties that no further continuances would be allowed. A jury trial is scheduled for June 13, 2011.

### III. Plaintiff's Fourth Motion to Amend

#### A. Legal Standard

Under Fed. R. Civ. P. 15(a), leave to amend before trial will be freely given "when justice so requires". Despite that

liberal amendment policy, the Court can deny a motion for leave to amend if amendment would result in undue delay or prejudice, the moving party has a bad faith or dilatory motive, the moving party has repeatedly failed to cure deficiencies with previous amendments or the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962).

Because there is a pending scheduling order in this case, which has been amended at the parties' request, leave to amend will not be so liberally granted. Fed. R. Civ. P. 16(b)(4) provides that, once a scheduling order has been issued, "[a] schedule may be modified only for good cause and with the judge's consent." Steir v. Girl Scouts of the USA, et al., 383 F.3d 7, 12 (1st Cir. 2004). To show good cause, a party must demonstrate the "deadline in the scheduling order may not reasonably be met, despite the diligence of the party seeking the extension." Tele-Connections, Inc. v. Perception Tech. Corp., Civ. A. No. 88-2365-S, 1990 WL 180707, at *1 (D. Mass. Nov. 5, 1990).

**B.  Analysis**

HOC moves to amend the complaint to add a claim for a violation of Chapter 93A against St. Paul. HOC claims that, since the July, 2007 agreement, St. Paul has failed to pay all its defense-related costs (approximately $523,973) in full or $1.6 million in indemnity-related costs. Allegedly, during the period of the stay (July, 2007 through October, 2010) St. Paul

required "voluminous and exhaustive details" from HOC and its consultants in support of its claimed defense costs but then issued discounted payments without explanations for the discounts.

HOC complains that during discovery, St. Paul provided over 10,000 pages of disorganized documents. In the documents disclosed to HOC by St. Paul, HOC found two insurance policies from 1981-1982 of which it was previously unaware. HOC seeks to add those to the complaint and states that the addition is not prejudicial because St. Paul has never confirmed nor denied the existence or applicability of any disputed insurance policies. HOC contends that it requested a copy of Policy No. DEE-UB-903E888-1-81 but St. Paul has not provided it.

St. Paul opposes the motion to amend on the grounds that it is untimely in that it was filed nearly four years after the action commenced, three years after the stipulation dismissing the original Chapter 93A allegation, weeks after the discovery deadline on January 31, 2011 and after the Court postponed trial to facilitate settlement on February 10, 2011. St. Paul maintains that defense of the Chapter 93A claim would require substantial additional discovery, resulting in additional costs and a further postponement of the trial date. St. Paul suggests that the amendment would require the joinder of Travelers entities (subsidiaries of St. Paul) because HOC puts their

actions at issue in the proposed fourth amended complaint. Finally, St. Paul contends that 1) the amendment is futile because it fails to state a claim for relief and 2) HOC failed to meet and confer with respect to the motion to amend as required by Local Rule 7.1.

### 1. Timeliness

HOC explains that it filed its motion to amend immediately after it discovered the facts alleged in the proposed fourth amended complaint. Nevertheless, the Court finds that HOC has not shown good cause for adding a Chapter 93A claim at this eleventh hour shortly before trial. The Court is unpersuaded that plaintiff was prevented from discovering earlier the relevant information warranting the renewal of its Chapter 93A claim. The holding in Tele-Connections, Inc. v. Perception Tech. Corp. is instructive here. See 1990 WL 180707, at *2. In that case, another session of this Court denied a motion to amend to add a Chapter 93A claim because the litigation was over two years old, discovery and pretrial motions had been completed and it would have been "highly prejudicial to presume that [the defendant] would have defended the case in the same manner, if liability were trebled." Id.

With respect to the newly discovered 1981 and 1982 insurance policies, the Court concludes that adding them to the mix at this time would unduly delay the litigation because it would likely

require the addition of two new corporate defendants and require additional discovery. The Court acknowledges that HOC was unaware of those policies before October, 2010, but notes that it bore at least some responsibility for maintaining records of insurance policies that it had purchased.

This case was filed nearly four years ago. Although it has been stayed for a major portion of that time, discovery has been completed and the deadline for the filing of dispositive motions is April 7, 2011. At this juncture, the case is long overdue for resolution. Therefore, the proposed amendment would unduly delay the litigation and HOC has not shown good cause, as required by Fed. R. Civ. P. 16(b)(4), for a further modification of the scheduling order.

**2. Futility**

With respect to the Chapter 93A allegations, HOC's proposed amendment would also be futile. HOC articulated at oral argument that its Chapter 93A claim is based on defendant's 1) delay in performing a coverage investigation and 2) failure to reimburse HOC for all of its defense-related costs after July, 2007. The only allegations in HOC's proposed fourth amended complaint that relate to occurrences post July, 2007 are paragraphs 108 and 111, which allege that 1) in November, 2008, HOC had to reactivate the litigation in order to force St. Paul to honor its defense commitments and 2) between January, 2008 and January, 2011, St.

Paul failed to complete a coverage investigation with respect to the cause of the releases at the HOC site. Those allegations provide no support for a Chapter 93A violation. Moreover, they establish that HOC could have sought to renew its Chapter 93A claim as early as 2008.

When assessing the futility of a motion to amend, the Court applies the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Hatch v. Dept. for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001). To prevail on a Chapter 93A claim, the plaintiff must show that the defendant engaged in "immoral, unethical, oppressive or unscrupulous" tactics. Bank of Am., N.A. v. Prestige Imports, Inc., 917 N.E. 2d 207, 229 (Mass. App. Ct. 2009) (internal quotations omitted).

Even viewing the record in a light most favorable to the plaintiff, there is little evidence that St. Paul engaged in unscrupulous conduct. See Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc., Civ. A. No. 09-10143, 2011 WL 309664, at *5 (D. Mass. Jan. 27, 2011) (holding that conduct amounting to a mere breach of contract did not constitute a Chapter 93A violation). The parties dispute whether the costs above the $1.25 million that St. Paul has already paid are covered by their insurance contracts. A breach of contract, without more, does not constitute a violation of Chapter 93A. Id. Furthermore, the preferable method of seeking redress for an

adversary's alleged improper conduct during the course of litigation is a motion for sanctions or to compel, not the addition of a Chapter 93A claim.

Finally, although HOC's failure to comply with Local Rule 7.1 is not dispositive, it is disconcerting. See Converse Inc. v. Reebok Intern. Ltd., 328 F. Supp. 2d 166, 171 (D. Mass. 2004) (imposing $15,000 in sanctions for failure to comply with Local Rule 7.1).  The Court will not impose sanctions against HOC for its failure because the denial of its motion to amend is sanction enough.

## ORDER

In accordance with the foregoing, plaintiff's motion to amend (Docket No. 84) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton  
Nathaniel M. Gorton  
United States District Judge

Dated April 5, 2011